UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

GUILLERMO DILONE,                                                Case No.: 19-73583-reg
                                                                 Chapter 7


                                        Debtor.
-----------------------------------------------------------------x
AMBRIORIX POLANCO and THE
PHOENIX COMPANY, INC.,

                                        Plaintiffs              Adv. Pro. No. 21-8157-reg

                - against -

GUILLERMO DILONE,
                                        Defendant.
-----------------------------------------------------------------x

## DECISION AFTER TRIAL


       This matter is before the Court pursuant to an adversary proceeding commenced by

Ambriorix Polanco and The Phoenix Company, Inc. (the "Plaintiffs") seeking to (i) revoke the

discharge granted to Guillermo Dilone (the "Defendant" or the "Debtor") pursuant to 11 U.S.C.

§ 727(d)(1) and/or (ii) have a debt owed to the Plaintiffs deemed nondischargeable pursuant to

11 U.S.C. § 523.  At the close of trial, the parties settled the § 523 claim and stated the terms of

the settlement on the record. Pursuant to the terms placed on the record the first cause of action

with respect to the particular debt owed by the Debtor to the Plaintiffs is nondischargeable and

shall be paid as agreed by the parties.  Having resolved that cause of action the Court advised the

parties that if they wished to resolve the remaining claim under § 727(d)(1) they needed to

comply with the applicable rules regarding settlement of such a claim. Despite multiple attempts

by the parties and guidance by the Court, the parties were unable to submit the proper

documentation to resolve the § 727(d)(1) claim.  Therefore, the Court makes the following

rulings regarding the cause of action to revoke the Debtor's discharge. The Defendant failed to include the Plaintiffs in his list of creditors and when he added them as creditors, he failed to give them notice of the petition, along with notice of the deadline to object to the Defendant's discharge or the dischargeability of the Defendant's debts. The Defendant also failed to list intellectual property held in his name as assets in his schedules, which gave rise to this adversary proceeding. While revocation of a debtor's discharge should not be lightly granted, a discharge is reserved for the honest but unfortunate debtor. Because the Defendant failed to list certain assets and had no valid justification for failing to do so, the Court concludes that he acted with fraudulent intent to conceal his assets and his discharge shall be revoked.

### Procedural History

On May 13, 2019, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code. Kenneth P. Silverman (the "Trustee") was appointed as the chapter 7 trustee. The Debtor failed to include the Plaintiffs on the original matrix of creditors and did not file any schedules with the petition. The deadline to file a complaint objecting to the discharge of the Debtor or dischargeability of the Debtor's debts was set for August 19, 2019. On May 31, 2019, the Debtor filed his schedules and listed the Plaintiffs as unsecured creditors. However, the Debtor failed to file Local Form No. USBC-64 entitled "Affidavit Pursuant to Local Rule 1007-1(b)." Pursuant to Local Rule 1009-1(a), Debtor was required to serve any newly added creditors, which would include the Plaintiffs, with notice of the case and the deadline for certain events, including the deadline to object to the discharge of the Debtor or the dischargeability of the Debtor's debts. On December 8, 2020, the Trustee filed a report of no distribution. On March 26, 2021, an order was entered granting the Debtor's discharge. On May 21, 2021, the Debtor's case was closed.

On June 24, 2021, the Plaintiffs filed a motion to reopen the Debtor's case which was denied based on the Plaintiffs' failure to appear at the scheduled hearing on the motion to reopen.

On August 4, 2021, the Plaintiffs filed another motion to reopen the Debtor's case and on August 31, 2021, the Debtor filed opposition to the motion to reopen the case. On September 9, 2021, the Plaintiffs filed a reply and on September 13, 2021, the motion to reopen the Debtor's case was granted.  The Trustee was reappointed to the Debtor's case and on November 11, 2021, this adversary proceeding was filed.

On February 4, 2022, the Debtor filed an answer to the complaint and on September 14, 2022, the Plaintiffs filed a motion for summary judgment with respect to the first cause of action seeking to revoke the Debtor's discharge pursuant to 11 U.S.C. § 727(d)(1).   On October 14, 2022, the Debtor amended his schedules to add two assets.  The assets added by the Debtor were a patent ("Patent") for luggage incorporating a weight determination mechanism and location determination mechanism and a trademark ("Trademark") related to the Patent.  Debtor listed the value of both the Patent and Trademark at $0.  On October 16, 2022 and October 19, 2022, the Debtor filed opposition to the motion for summary judgment.  A hearing on the motion was held on October 19, 2022 and the Court denied the motion. While the Court found that the Debtor failed to list his interest in the Patent and Trademark in his petition, resolution of whether the Debtor did so with the intent to defraud would require an evidentiary hearing.  The trial was held on November 1, 2022.  During the trial, the parties indicated they would be settling the second cause of action under § 523 and stated the terms of the settlement on the record as follows:  the Debtor is to pay a total of $40,000.  The first $10,000 to be paid on or before December 1, 2022. The Debtor is to pay the remainder on a monthly basis through August, 2023.  In the event of a default, the Plaintiffs may enter a judgment in the amount of $50,000 with credit given for any payments made. In addition, and subject to any rights asserted by the Trustee, the Patent and Trademark shall become property of the Plaintiffs in the event of a default in payment.

The parties also stated they would attempt to settle the first cause of action seeking to revoke the Debtor's discharge and would advise the Court if a settlement was reached.  After several unsuccessful attempts by the parties to provide the Court with the appropriate documentation to settle the § 727 action, the remaining cause of action was marked submitted.

## Facts

Prepetition, on December 2, 2014, the Debtor was granted the Patent from the United States Patent and Trademark Office for luggage incorporating a weight determination mechanism and location determination mechanism.  (Pl. Ex. 5).  The luggage would also incorporate a camera to take one or more pictures upon opening the luggage.  According to the Debtor's testimony at trial, he was introduced to Mr. Polanco through a relative at a time when the Debtor was seeking investors to fund the development and manufacturing of luggage using the Patent. (Trial Tr.p. 9). The Debtor met with Mr. Polanco and discussed the Patent and his plan to obtain sufficient funds from investors to bring the project to fruition.  (Trial Tr. p. 12). According to the Debtor, Mr. Polanco was the only investor in the project.  The Debtor had formed GD Global Corp. ("GD Global"), a New York corporation, in December 2013, as part of his plan to develop and manufacture the luggage. (Trial Tr. p. 17), (Pl. Ex. 9).    The Debtor had advanced approximately $25,000 of his own funds into GD Global, which had been deposited into a Bank of America account held by GD Global.  (Pl. Ex. 10).  The Phoenix Company issued two checks to GD Global in the amount of $25,000 each which were deposited on November 14, 2016 into the GD Global account at the Bank of New York.  (Pl. Ex. 11). Bank statements from the GD Global bank account reflect that the Debtor used this account in part to pay for the Debtor's personal expenses.  The Debtor also testified that the manager of the luggage project received a check from GD Global in the amount of $45,000.00 for the development of the

luggage, plus $5,000.00 was used to purchase airline tickets, transportation and for other expenses incurred in traveling to China with respect to the luggage project. (Trial Tr. p. 25). On December 21, 2016, the Debtor applied to the U.S. Patent and Trademark Office for the Trademark, which was registered on February 27, 2018. (Pl. Ex. 6).

According to the Debtor, he soon ran out of funds to continue to develop the luggage project. From January 2017 to July 2017, Mr. Polanco and the Debtor exchanged several emails regarding the status of the project and the Debtor's ability to provide the Plaintiffs with a return on their investment. (Pl. Ex. 16). Based on the email exchanges, it was clear that the Debtor had insufficient funds to continue with the luggage project and the Debtor would be unable to repay the Plaintiffs.

The Debtor filed a petition for relief under chapter 7 in May, 2019. In the original schedules, the Debtor did not list the Patent or the Trademark as assets. The Debtor also failed to disclose his interest in GD Global. According to the Debtor's testimony at trial, he believed the Patent was worth approximately $50,000.00 (Trial Tr. p. 17). The Debtor also testified that he did not list the Patent and Trademark in his schedules because he mistakenly believed that it was not necessary. This belief was based on his understanding that because no products had been manufactured using the Patent or the Trademark he did not have to list them as assets. (Trial Tr. p. 44). The Debtor acknowledged that he reviewed the petition and schedules before they were filed with the Court. (Trial Tr. p. 35). The Debtor added the Patent and the Trademark to his schedules as assets on October 14, 2022, after this case was reopened and well after this adversary proceeding was commenced. Notwithstanding his testimony at trial regarding the value of the Patent, he listed the value of the Patent and the Trademark at $0. The Debtor filed a certificate of dissolution of GD Global on January 24, 2022. (Pl. Ex. 9).

**Discussion**

In the first cause of action, the Plaintiffs seek to revoke the Debtor's discharge pursuant to Bankruptcy Code § 727(d)(1).  Under this section, the Court shall revoke a debtor's discharge if "such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge."  11 U.S.C. § 727(d)(1).  To prevail under this section, a plaintiff must establish that "(1) the debtor obtained a discharge through fraud, and (2) the movant did not know of the fraud predischarge."  *McCarthy v. Nandalall* (*In re Nandalall*), 434 B.R. 258, 266 (Bankr. N.D.N.Y. 2010) (citation omitted).  A request to revoke a debtor's discharge must be made within one year of the granting of the discharge.  11 U.S.C. § 727(e)(1).   The Court is mindful that revocation of a debtor's discharge is "'an extreme penalty,' and [section 727] should be 'construed strictly against those who object to the debtor's discharge and liberally in favor of [the debtor].'"  *In re Bressler*, 601 B.R. 318, 331 (Bankr. S.D.N.Y. 2019) (quoting *In re Moon*, 385 B.R. 541, 559 (Bankr. S.D.N.Y. 2008) and *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996)).  However, a discharge is a privilege, not a right, and is only to be granted to an honest debtor.  *Cong. Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994).  The facts of this case clearly warrant revocation of the Debtor's discharge.

The first element requires a finding that the debtor committed actual fraud and that the plaintiff did not have knowledge of the fraud prior to the discharge.  *In re Nandalall,* 434 B.R. at 266.  The fraud must be "fraud in fact," for example, the intentional failure to list assets in the debtor's schedules.  *In re Bressler*, 601 B.R. at 331 (*citing* 6 Collier on Bankruptcy ¶ 727.17 (16th

6

ed. 2019)).  In our case the Debtor admits he intentionally failed to list the Patent and Trademark in his original schedules.  At trial, the Debtor also testified that he believed that the Patent was worth approximately $50,000.00.  (Trial Tr. p. 17). Later in his testimony, the Debtor stated that he failed to list the Patent and Trademark in his schedules because he believed they had no value. (Trial Tr. p. 43).  When questioned whether he failed to list the Patent and Trademark because the Trustee might administer the asset for the benefit of the estate, the Debtor was evasive and while acknowledging that this was a possibility, he believed he was not required to list them because no product was ever manufactured using the intellectual property.  (Trial Tr. p. 44).

Based on the circumstances and after evaluating the Debtor's testimony, the Court concludes that the Debtor's failure to list the Patent and Trademark in his schedules was intentional and was done to conceal these assets from creditors and the Trustee.  It was not until this adversary proceeding was ready for trial that the Debtor amended his schedules to include the Patent and Trademark.  The Debtor's valuation of these assets at zero is belied by his testimony at trial.   Even if the Debtor believed that the Patent and Trademark were worthless, the Debtor was still under a duty to disclose the asset on his schedules. "The recalcitrant debtor may not escape (denial of his discharge) by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (*citing Diorio v. Kreisler-Borg Construction Co.*, 407 F.2d 591, 592 (2d Cir. 1969)).  As this Court has previously held, it is not up to the debtor to determine whether an asset is worth reporting:  the debtor is charged with answering the questions completely and with accuracy.  *Saviano v. Tylee* (*In re Tylee*), 512 B.R. 409, 417 (Bankr. E.D.N.Y. 2014) (*citing New World Restaurant Group, Inc. v. Abramov* (*In re Abramov*), 329 B.R. 125, 134 (Bankr. E.D.N.Y. 2005)).  The conclusion this Court draws is

that the Debtor knowingly and fraudulently concealed these assets to keep them for himself. Any belated attempt to amend the schedules to add the assets does not cure the Debtor's clear failure to list the assets in the original schedules. For these reasons, the Plaintiffs have established the first element by a preponderance of the evidence.

The second element of § 727(d)(1) requires a finding that the Plaintiffs "did not know of such fraud until after the granting of such discharge." 11 U.S.C. § 727(d)(1). In some instances, creditors will seek revocation of the discharge where they obtained information regarding the debtor after the discharge was entered. *In re Tylee*, 512 B.R. at 418, 419 (citation omitted). In other instances, creditors may seek revocation of the discharge because they had no notice of the filing and could not timely bring a section 727 action. When a debtor fails to list creditors on the schedules, these creditors cannot receive timely notice of the bankruptcy and are unable to bring a § 727 action before the deadline set by the Court. In this case, the Debtor filed the matrix with the petition and failed to include the Plaintiffs. Over two weeks later, the Debtor filed his schedules. Although the Plaintiffs were listed as creditors in the schedules, the Debtor failed to serve the Plaintiffs with notices regarding the Debtor's bankruptcy and the deadline to object to the Debtor's discharge or the dischargeability of the Debtor's debts to the Plaintiffs, in disregard of the Local Rules. Because the Plaintiffs were added as creditors after the matrix was initially filed, it was also incumbent upon the Debtor to add the Plaintiffs to the creditor matrix. Notices from the Bankruptcy Court are sent by the Bankruptcy Noticing Center (the "BNC") to the addresses on the matrix and electronically to parties that have provide electronic addresses pursuant to the applicable rules. Because the Debtor never served the Plaintiffs with notice of the bankruptcy and never updated the matrix to include the Plaintiffs, they had no notice regarding the contents of the petition and schedules. As a result, the Plaintiffs did not have an

opportunity to review the schedules and discover the Debtor's fraud in time to file a complaint objecting to discharge.  Therefore, the Plaintiffs have met both prongs of § 727 (d)(1) by a preponderance of the evidence and the Debtor's discharge is revoked.

**Conclusion**

For the reasons set forth in the Decision After Trial, the Defendant's discharge is revoked pursuant to 11 U.S.C. § 727(d)(1).   The Court shall enter judgment in favor of the Plaintiff on the cause of action under 11 U.S.C. § 727(d)(1) and shall enter an order approving the settlement of the cause of action under 11 U.S.C. § 523 (a) pursuant to the terms set forth at the trial.



Dated: Central Islip, New York
June 1, 2023

Robert E. Grossman
United States Bankruptcy Judge